Good morning, Your Honors. Megan Jundges for Plaintiff Appellate Martinez H. I'm working under the supervision of Caleb Mason. I'm sorry? I'm working under the supervision of Caleb Mason. All right. Your Honors, this Court should reverse the District Court's grand assembly judgment for the prison officials. The officials' delayed treatment of Mr. Aytch's vision impairment is an endosynfective tooth for a period of one year in the case of his eyes and a period of 82 days in the case of the infected tooth. This delay in treatment caused Mr. Aytch to suffer both from unbearable pain and it infected his daily activities during the periods of delay. The officials have asserted that Mr. Aytch must prove an intent to harm in order to recover and prove deliberate indifference in this case. They've also asserted that his claims cannot stand because the delays were due solely to an absence of optical and dental practitioners at the prison. These assertions have no basis in the law of this circuit or in Supreme Court precedent and must be rejected. Mr. Aytch suffered from two serious medical conditions, a vision impairment and an infected tooth. The vision impairment was diagnosed in March of 2007. Was that when he entered the prison? That was upon intake, yes. So prior to the time he entered prison, there had been no diagnosis of any kind of vision problems? The record doesn't show any evidence that there was a diagnosis prior to that, no. The vision... What evidence is there that the vision problems caused him pain? On November 20th, 2007, at excerpts of records 76 to 77, you'll see the complaint of unbearable pain in Mr. Aytch's second-level grievance that he filed with respect to. Did he explain it? Was he talking about headaches? Was he talking about problems in his eyes? Or was it something else? He first began complaining of pain in September, and he said it resulted from eye strain. By November, that pain had become unbearable, but it was attributable to eye strain. Is there anything in the record that reflects medical confirmation of the pain he suffered from vision? The record doesn't show anything other than the grievances that Mr. Aytch filed. And when he... There was a... He was granted some glasses, right? I mean, that was the fix. Yeah, the fix was glasses. He received those a year after the vision deficiency was diagnosed. Did you know whether they were unusual in their prescription? I mean, is there anything that would tell us why he suffered unbearable pain as a result of needing eyeglasses? The only evidence in the record is the order for the optical order. For the eyeglasses. There was no examination, no treatment of Mr. Aytch's eyes for the entire period of the year. He wasn't seen by an eye doctor until February. That was the first time that anybody had examined him since his intake into the prison. And when he was seen by the doctor, what treatment was ordered? They ordered him eyeglasses immediately. The optical order went out the next day, and he received them two and a half weeks later. Other than eyeglasses, was there any treatment for pain or anything else for his eyes? No. They didn't see him. He complained of unbearable pain. They didn't provide him with any pain relievers or any examinations. He simply saw the eye doctor in February, received glasses in March. Go ahead. After he received the glasses, was there any other indication that there was pain or any other complications or problems? The record appears to show that that condition was resolved by the provision of the eyeglasses. I notice that, as far as I can tell, there are three defendants in this case. Is that right? No, there are five. All right. Actually, six. One of them is the grievance coordinator, isn't that right? Yes. Another is the director of nursing services? Mm-hmm. Another is the warden? The warden. Who are the other two? We have the director of the Nevada Department of Corrections, and we have two other correctional nurses. So there are six. Six. Well, what's the state of the record with respect to their ability, if any, to increase the amount of medical care that's available to prisoners? The director of the prisons will receive the funds and allocate them. No, I can't. The director, Defendant Skolnick, will receive the funds and allocate them to the prisons, and the warden of the prison will allocate them in the various services that the inmates will receive. No, I can't understand a word you're saying. You might want to slow down. Oh, okay. It may be the PA system. Perhaps I'll back up a little bit. With respect to the warden and the Nevada Department of Corrections, the director of it, they were the ones that distributed the funds to the prisons that would go towards prison, What's the state of the record on this? The record doesn't show that there are – Well, I mean, the defendants here say we just didn't have medical care available. We put him on a list and put him in the queue, and we got to him as soon as we could. So why is that not an excuse? It's not an excuse because the record doesn't show why the delays in treatment occurred here, other than that there was a total lack of – Well, that was the finding. Isn't that what the district judge said, is simply there weren't enough doctors? But that doesn't excuse a constitutional violation. Well, if you were – you know, if you wanted an injunction, as many of these cases involve, that might be one thing. But here you're seeking damages against individuals, right? Yes, sir. But, I mean, if it's – we don't know – there's no showing here that there was anything they could have done, other than what they did do. I'm not saying that delaying medical care can't sometimes rise to the level of a constitutional violation, if there's a deliberate indifference. I think probably you would agree with that. But if you're putting an impossible burden on the defendants, I don't understand how you can prevail. I guess for me, one of the difficulties in this case is trying to decide who has the burden of proof in determining what ability these defendants had to affect the quality and the level of medical care. Well, as this Court's well aware, to prove deliberate indifference, Mr. H. McShirley suffered from serious medical conditions that the defendants were aware of them, that they failed to respond, and in a delay case, that that delay caused him harm. That's Mr. H.'s burden, and the record shows that here. To the extent that there was nothing that they could do or that the delays were not their fault, then that was something we'd hope develop at trial, a factual issue. I mean, who's got the burden? Don't you have to plead and prove something like that? No. Mr. H. The burden Mr. H. has is to show the medical condition, awareness of it, failure to respond, and harm caused by the delay. That's all he needs to show, and that's what the record shows here. What evidence is there that the warden was aware of Mr. H.'s problems? The warden, under the administrative regulations in the Nevada Department of Corrections, all inmate grievances are supposed to be or the first level inmate grievances are to be reviewed and responded to by the warden. The record doesn't show that he did respond to them. It also does not show that he didn't review and respond to them. But in a 1983 case, don't you have the responsibility to show personal involvement on the part of each and every defendant? Mr. H.'s case was dismissed before he could conduct any discovery. But you have to allege personal involvement in order to survive. A motion to dismiss. That's true, and Mr. H.'s complaint and his oppositions to the defendant's motions set forth that the warden was at least the warden was supposed to review the grievances, and second level grievances are to be reviewed by the director. Is that enough to show personal involvement? It would show awareness of the conditions and inaction on their part to do anything to treat them, knowing of the delay. The state of Nevada wishes to incarcerate prisoners. It has to provide them with the minimal supplies measure of life's necessities. The district court acknowledged that Mr. H. may very well have been denied those necessities here. The district court relied on the fact that they responded to his grievances. Let's assume that we thought there was an Eighth Amendment violation here. At least with respect to the vision problems, why aren't the defendants entitled to qualified immunity? What case do you have that would support the idea that if a prisoner comes and complains about vision problems, that we are going to commit an Eighth Amendment violation by delaying his obtaining reading glasses? There's two cases. The first is Balisok v. Fleck. It's not an eyeglasses case. There in Balisok, the inmate suffered from a chronic and recurrent infection. Okay. Right. Do you have a vision case? We have a Balisok alleges the same harm from the conditions. Mr. H. suffered from blurry vision. He suffered from pain as a result of eye strain. The inmate in Balisok also alleged pain, and he also alleged a deterioration in his vision. So the harm was a – But he had an underlying condition, an infection that we don't have here. No, but the harm is the same. And we believe that would give the officials fair warning that a condition that's causing deteriorating vision and that's causing an inmate pain would state an Eighth Amendment violation under Balisok. We also have a – we also have Wood v. Idaho Department of Corrections. There we had an inmate that had aoritis, which is an inflammation of the eye. In that case, again, the inmate alleged pain, and he alleged blurry vision. That's why I asked whether there was any evidence when he was treated medically that there was anything other than corrective lenses that he needed. You know, if he's suffering from eye cancer or something that's internal to the – to his vision, that would be one thing. An infection is very different, though, from the kind of ordinary experience that we have when we need glasses. Do you have any case that deals with prisoners who need glasses? No, we don't, Your Honors. Okay. Then why would the – then why would the officials in the – in the Department of Corrections be on notice that they were about to commit an Eighth Amendment violation? We believe that, as I was stating with those two cases, that the conditions caused certain harm to – in each case, and that that would put the – all they need is fair warning that their actions would be unconstitutional. And we believe that where a condition causes the same harm that Mr. H suffers from here, that that would put them on fair warning. In Hope v. Pelzer, the United States Supreme Court found an Eighth Amendment violation where the prison guards chained an inmate to a post. There had been no prior case finding that to be unconstitutional. But it was so obvious that it was clear to the court that there was a constitutional violation, even though no prior case had had those specific facts in it. We believe that it's this obvious here. The High Desert State Prison is one of the largest institutions in the Nevada Department of Corrections. At the time Mr. H was incarcerated there, it was housing over 2,000 inmates. It lacked an eye doctor for a seven-month – I see my time is up. Could you wrap up, please? Yes. We believe that the record adequately establishes that Mr. H suffered from serious medical conditions that the officials were deliberately indifferent to them when they delayed his treatment. All right. Thank you, counsel. Thank you. We'd like to thank Southwestern Law School for its services on this case. We'll hear from Ms. Gay. Good morning, Your Honors. May it please the Court, my name is Clark Leslie. I'm Senior Deputy Attorney General for the State of Nevada. Thank you, counsel. Good morning. Your Honor, as you pointed out, I think the key things that I wished to focus on, and I will mention them briefly, and if there are no questions, I will submit. First of all, Judge Bivey, you asked questions about connecting a situation that involves the prescription or prescribing of glasses and the concept of serious pain under the objective and subjective tests of the Stalin Pharma. That is one of the key questions. And there are no questions. Counsel, the question I will have for you is I get the difficulty that Nevada has in understanding that a prisoner is suffering unbearable pain because he needs glasses and there doesn't appear to be any other condition in his vision. Teeth is a whole different matter. This is a common experience, not unusual for ordinary people taking good care of their teeth to have extreme pain. And you delayed for months in getting him to a dentist. Now, it seems to me that Nevada's got an obligation either to treat the patient and to treat him quickly when he may be suffering pain, as people will know, or to let him go so he can get his own dentist. That certainly is always an option for a patient to get his or her own treating physician or dentist. Not in a prison. But not in a prison. Right. And in this case, he was provided the option of obtaining some pain medication pending the ability to have a dentist come forward. But he said he didn't have funds on the books to get the pain medication. Originally, that was correct, Your Honor. And three weeks later, he was then provided a pain pack, and he was provided with other pain medications. What was the pain pack? What was it? Ibuprofen? It's ibuprofen. It took him three weeks to get him ibuprofen? It did take three weeks to get him ibuprofen, and that was a delay that I can't and I won't explain away. He should have been provided the pain medication earlier. But the question is whether or not this rises to a constitutional violation. Well, was he continuously given pain medication until he was able to see a dentist? After the period that Judge Bybee has just alluded to where he was not provided over-the-counter medication, he was provided pain medication through the dispensing agents until the time that the dentist came forward. How often? My belief, it was every seven to ten days. Your Honors, let me, and I know you're well aware of the facts, obviously, from the questions you have asked, but let me emphasize that the kites or the grievances that were posted and given to my client, on October the 23rd, there was an advisement that they had just been able to retain the services of a new dentist. Now, keep in mind, Your Honors, that the original dental complaint was made on August the 14th. So we now have roughly a month and a half or so of what I would admit to be less than optimal care. Twelve days later, we all agree, on November the 4th of 2008, the dentist arrived and pulled the tooth. And actually, there is an indication in the record that is under dispute that the dentist had arrived the day before and that Mr. H had missed the appointment. So other than an admitted period of time when the prison was advised that he could not purchase his own pain medication, and then he began to receive that medication, we are really talking about a 12-day period of time under which he was receiving care. But did the medical care that he was given, the pain pack, did that completely alleviate the pain for him? My understanding is his grievances indicated it did not. But we only have that indication on the record to substantiate the level of discomfort that Mr. H was suffering. Now, keep in mind... But isn't that enough? Doesn't the Hunt case tell us that's enough? If the prisoner documents that he's continuing to endure pain, isn't that enough to survive some judgment? I think not respectfully, Your Honor. When we look at the panoply of cases that discuss dental discomfort vis-à-vis the Eighth Amendment and deliberate indifference, there are one of the cases, for example, talked about an inmate who lost weight because he couldn't eat, because his teeth were literally cracking and falling apart, and because his dentures would no longer fit. The other cases talk about exceptionally severe problems where the... But didn't Mr. H say that he was unable to eat because he was in constant pain? He did. But there is nothing in the record, nor did he ever allege that he missed any meals because he couldn't eat. He never alleged that he lost any weight because he couldn't eat. And he never alleged that, and this is another very significant and important factor I was going to mention, Your Honor, he never mentioned that he requested a soft food diet, which was available, and the cases have indicated that would be the appropriate thing to do, absent being able to provide care. He never requested any of those, which is inconsistent with an individual who is claiming that he is experiencing this excruciating 24-hour... Well, for summary judgment, don't you have to take the allegations, the statements of the plaintiff as true? Yes, you do. So why wouldn't that be enough to survive summary judgment? Because the... Is all of this in the record, by the way, what you just said about... Yes. Well, or is not in the record, as the case may be, in terms of losing weight, in terms of, you know, cracking... I mean, was there a deposition taken or something that would indicate that these things did not happen? No, Your Honor. So this is just your statement. Is that right? It's my statement that the record is devoid of any of these facts. Oh, okay. But you're not saying that the record shows that this didn't happen. I am not, Your Honor. Okay. So you're just making assertions. I am stating to the Court that there is no record that any of these factors occurred. And I'm not trying to parse, and I'm certainly not arguing with you, Your Honor. So it's not a matter even of opposing evidence. You've got his statement, but you're just saying it's not enough. And I'm saying it's not enough, Your Honor, because the, you know, the statement that is being made by the inmate is inconsistent with the failure of the record that support other things that we would normally see in the instance of dental care problems. Inmates usually argue that they have lost weight or they can't eat or that they have had to miss meals or that they have cracked teeth. Well, they don't have to make all the evidence they have. They just have to make enough to get over the burden, get over the hurdle. That is correct, Your Honor, that we have to accept the statements and averments of the plaintiff as being true with, you know, some exceptions. You know, under the Ashcroft case, we learned that the old standard of accepting everything as being true no matter what is not always what we are faced with in terms of motions to dismiss, for example. And that we can look past the statement and look at the entire record to determine whether there is some credibility involved. And I know that that's balancing scale and so forth. I'm simply saying that, you know, I do a lot of these. I see the records consistently. And I would expect, and I would hope this Court would expect, to see some corroborating evidence rather than. That's helpful. I just wanted to make sure I understood what you were saying. All right, Your Honor. And, Judge Arnold, you asked a question that was perplexing to me early on, and my time is nearly up, so I'll sit down. But you asked about the burden of proof, which was an interesting question, because it seemed when reading the briefs that the burdens of proof were being placed upon my client. In fact, it is not my client's burden to show deliberate indifference. And when my esteemed opponent mentioned that there were things that they hoped to prove at trial, we all know you can't hope to prove something at trial to avoid an adverse ruling on a motion for summary judgment. And, Judge Rawlinson, you asked some questions about personal involvement. At least as to many of the defendants, the record is quite devoid. With that, Your Honors, unless you have any further questions. I do have some questions. Are you familiar with the regulations that govern the prison in terms of providing medical care? Yes. And so don't the regulations that refer to dental service provide that the dental service should be timely and include arrangements for handling urgent and emergent conditions? Yes. And so is it your position that this regulation was adhered to, vis-à-vis Mr. H.? Yes, because we don't believe that this was an urgent situation based on the facts, the complaints, and the overall totality of these circumstances. I don't wish to sound harsh. I don't wish to sound uncaring. But in the prison system, when you're looking at thousands of prisoners, if an inmate who's complaining about one tooth, and yes, I am extrapolating here, is able to eat and he is able to engage in his normal activities, is going to be provided with outside care, suddenly you're faced with hundreds, if not thousands, of inmates who are now also asking for the same thing. Isn't that what we said in Hunt, that the prison system does have an obligation if there is an infected tooth that's interfering with the health of the inmate, that the prison has a responsibility as a custodian of the prisoner to provide that care? Yes, and I think that if the caregivers that were looking at Mr. H. at the time had felt that this was a situation that was going to morph into something life-threatening or would have devastated his entire dental care, that would have been a Hunt situation. They would have had to provide outside care. Not only was that not what they concluded, but we know from the record that once the tooth was pulled, everything was all right with this inmate. Well, the problem is how long it took to pull the tooth. But we understand your argument. Any further questions? May I, Judge? Sure. You say in your brief that the Department was objectively unable to provide relief. What's the state of the record on that? The responses to Mr. H.'s grievances and complaints were we do not have an ophthalmologist. We do not have a dentist who shows up more than one month, and we are backlogged extensively and, you know, quite severely. So is it your ---- Go ahead. I'm sorry. That would be my statement to your question as to the objective nature of not being able to provide the care. Well, but you have some obligation under the law to make some reasonable effort to provide that care. Yes. I don't know. I mean, I still have this difficulty with the burden of proof. Then you go on to say there's no proof that your Department was not seeking qualified health providers. What's the state of the record on that? State of the record on that, and it's interesting. I discussed this with the Solicitor General as to how to approach this, but the first time, the very first time this question was ever raised about the reasons why, appeared at page 31 of my esteemed opponent's supplemental brief where he states and she states, H. anticipates that the prison officials will argue that their inability to adequately respond to the medical and dental needs resulted from budgetary constraints. We never made that argument. There is nothing in the record that would suggest or support that we did not make a concerted effort to obtain medical providers in this area. I'm prepared to offer under the record the amount that was being offered to doctors, which is under Senate Bill 757. Well, if there's a remand, I suppose that would become relevant. I don't think we can ---- Yeah, okay. The point is whose burden is it? Well, the burden is we're not making that argument. My opponent is making that argument. Recently in Edward, excuse me, Wood versus ---- I believe it's your time, so could you please wrap up? Yes. In Wood v. Milliard at 132 Supreme Court, 1826 and 2012, it was clearly stated that the appellate review is limited to issues that are raised below. The issue I was just speaking about was not raised below. Thank you very much, Your Honor. Thank you, counsel. We'll give you one minute for rebuttal since we spent so much time questioning you. Thank you, Your Honors. Mr. Leslie, my opponent has stated that Mr. H received pain medication during the month of October and that with respect to his infected tooth, this should defeat his deliberate indifference claim. He was provided medication on October 1st. It was another 17 days and two nights later before he was given a second pain pack. The next one came on October 31st, and then he waited another five days to have the tooth extracted. He was only provided with ibuprofen. They didn't give him antibiotics until mid-October, two weeks before the tooth was extracted. And everybody knows or everybody agrees here that what he needed was an extraction of the tooth and not just pain relievers in the interim. Counsel, what liability do the nurses have under Section 1983 for failing to provide him with a dentist? The State of Nevada incarcerates prisoners and has to provide for their medical care. It does that. The State of Nevada, but the defendant is not the State of Nevada. You've got individuals and they're nurses. They cannot extract the tooth themselves. So what responsibility do they have for providing him with a dentist? At least an examination to make some sort of medical judgment that perhaps treatment was delayed here for the right reasons. He wasn't examined until October, a month and a half later. Are you alleging that the nurses deliberately delayed him from seeing, prevented him from seeing a dentist? I thought the problem was sort of a structural problem. That is that Nevada didn't have a dentist on retainer. It took them a while to do that. The delay may be unconscionable. I'm trying to figure out why these nurses are responsible for that delay. Because the State of Nevada runs the prisons through its officials and through its employees. But that's respondent superior liability. I mean, you can't be vicariously liable under 1983. There has to be personal involvement. You can't just say because they were part of the system they have a liability. It's very, very focused, very individual. So that's why we're curious as to what was the precise liability of the nurses under 1983. What was their personal involvement? Not just globally, that they were responsible for running the system. They received his grievances. They reviewed his kites and his medical records. They were aware of the complaints of pain that he had been making. What are they supposed to do? I understand they may be responsible for not giving him the pain pack. But beyond that and getting him to a dentist, what is a nurse supposed to do? See whether or not he could. They did speak with the dental department, the nurses that reviewed these grievances. They went to see if there were. Even a dentist, how is the nurse personally liable for the prisoner's pain? I mean, she can't hire the dentist out of her own pocket. She can't bring a dentist in, bring the family dentist in and say, see this guy quickly, I think he's in pain. There's no evidence in the record that they examined him or attempted to move him up on the basis of the seriousness of his complaints versus that of other prisoners. So would you be satisfied that the nurses had fulfilled their obligation if they had written a recommendation to the dentist to see him as soon as possible? Is that what you're arguing? No, we're arguing that he should have seen a dentist at least. But what could the nurses have done that would have satisfied your complaint? They could have got him in to see a dentist before 82 days had passed. How can they do that if there isn't a dentist available? Mr. Leslie stated that they were working very hard to get qualified practitioners. I'm asking you about the nurses. What are the nurses supposed to do? Because that's who you're suing. You're not suing the state of Nevada. You're suing the nurses. So what is the nurse supposed to do? The nurse can schedule him for an appointment or talk to the dental department and see whether or not there's an inmate who's not in such serious pain that can be moved. Along with everybody else, what we heard was that the state of Nevada was not managing its dental practice particularly well. The nurses are the ones who are responding to his complaints. They're the ones who are on that bottom level with his grievances. Could they have pulled the tooth themselves? They should have got him in to see the dentist to have the person who could pull the tooth pull it. If there was no dentist, what more could the nurses have done? They could have gone up the chain. We believe they ought to have told somebody their inmates waiting 82 days to have infected teeth extracted, their inmates that are waiting a year to get eyeglasses because we don't have an eye doctor and we don't have a dentist. They're responsible for providing the prisoners with medical care on the ground level. They're the ones who make the referrals to the dentists where they receive treatment and to the eye doctors. A prison as large as the High Desert State Prison without an eye doctor for a seven-month period, with a dentist visiting only once a month, these are issues. And the nurses are aware of them, and they're intimately involved with the inmates' complaints and can go to the administrators and say, look, we're not treating prisoners the way we ought to be treating them. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. Thank you.
judges: Arnold, Rawlinson, Bybee